**John R. HAWORTH, Trustee in Bankruptcy for Allied Wood Products Company, Bankrupt, Appellant,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, The State Commercial Bank of Thomasville, North Carolina, et al., Appellees.**

**No. 7241.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 9, 1956.

Decided Nov. 1, 1956.

Horace S. Haworth and Arthur M. Utley, Jr., High Point, N. C., for appellant.

Joseph T. Carruthers, Jr., R. Kennedy Harris and Welch Jordan, Greensboro, N. C. (Charles E. Roth, Greensboro, N. C., R. E. Whitehurst, New Bern, N. C., and C. A. York, Sr., High Point, N. C., on brief), for appellees.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

SOPER, Circuit Judge.

The Trustee in Bankruptcy of the Allied Wood Products Company is seeking to set aside as invalid the liens of five chattel mortgages of the bankrupt corporation on the ground that they were not properly recorded under the General Statutes of North Carolina pertaining to the registration of chattel mortgages of

domestic corporations. All of these mortgages were recorded in the Office of the Register of Deeds of Guilford County, North Carolina, where the corporation maintained its principal and only office in the State, and the contention of the Trustee is that, under the registration statutes they should have been registered in Forsyth County where the principal office of the corporation was stated to be in its certificate of incorporation.

Prior to the registration statute now in effect, which was enacted as Chapter 1190 of the Session Laws of 1953, it was provided in G.S. § 47–20 that no mortgage of personal estate should be valid to pass any property as against creditors or purchasers for valuable consideration, but from registration at the place where the mortgagor resided, and for the purposes of the statute the principal place of business of a domestic corporation was its residence. This provision gave rise to some uncertainty as to the proper place of registration under various circumstances and, accordingly, the Act of 1953 was passed. It appears from the report of the General Statutes Commission of December 1, 1952, that, in the opinion of the Commission, the statute then existing was not complete, for in many instances it was not clear where a mortgage should be registered in order to be valid against purchasers for value. Hence the statute was drawn so as to provide in detail a place of registration for mortgages of real and personal property, whether the mortgagor was an individual or a corporation. Sec. 31 N.C. Law Review p. 429.

The provisions of the amendatory Act of 1953 are as follows:

"G.S. 47–20.2. Place of registration; personal property.—

"(a) As used in this section:

"(1) 'Mortgage' includes a deed of trust and a conditional sales contract;

"(2) 'Mortgagor' includes a grantor in a deed of trust and a conditional sales vendee.

\* \* \* \* \* \*

"(3) If the mortgagor is a domestic corporation:

"a. Which has a principal office shown by its certificate of incorporation or other similar document filed with the Secretary of State or by its legislative charter, the mortgage must be registered in the county where the principal office is located according to such certificate or charter.

"b. Which has no such office so shown but does have a principal office in this State, the mortgage must be registered in the county where such office is located when the mortgage is executed.

"c. Which does not have a principal office in this State but has any office in this State, the mortgage must be registered in every county in this State where any such office is located at the time the mortgage is executed. Where such mortgage is registered in one or more of such counties but is not registered in every county required under this subsection, it shall, nevertheless, be effective as to the property in every county in which it is registered.

"d. Which has no office in this State, and no principal office is shown by its certificate of incorporation or legislative charter, the mortgage must be registered in each county in this State where any of the mortgaged property is located when the mortgage is executed, in order to be effective as to the property in such county."

As appears in these provisions the place of registration depends, under varying circumstances, upon the location of the principal office as shown by the certificate of incorporation of the mortgagor, or upon the actual location of the principal office or other office of the corporation in the State. The correct interpretation of the statute is important in this case and the controversy has arisen because the principal office of the bankrupt corporation was stated in the certificate of incorporation to be in Forsyth County whereas it was in fact located after November 11, 1953, in Guilford County, North Carolina where the

mortgages were executed and registered. The change of location was approved by the Board of Directors but no notice thereof was filed in the office of the Secretary of State as required in G.S. § 55–34.

It is conceded that this registration would have been correct under the earlier statute but the Trustee contends that under the present statute a chattel mortgage of a domestic corporation must be recorded where the principal office of the corporation is stated to be in the certificate of incorporation, regardless of its actual location. It will appear from an examination of the statute, set out above, that the question is not free from doubt. Section (3) a provides that if the mortgagor is a domestic corporation which has a principal office shown by its certificate of incorporation, the mortgage must be registered in the county where the principal office is alleged to be. This provision may be interpreted in one or the other of two ways: It may mean that if the corporation is possessed of a principal office, which is shown by the certificate of incorporation, the mortgage must be recorded in the county of that office; or the provision may be taken to mean that the mortgage must be recorded in the county of the principal office mentioned in the certificate of incorporation whether or not the corporation possesses a principal office in that county.

The correct interpretation must be ascertained by taking into consideration not only subsection (a) but also subsections (b), (c) and (d) of the statute. Subsection (b) is subject to the same uncertainty as subsection (a). Subsection (c), however, is consistent with the idea that the actual location of the principal office or other office of the corporation in the State governs the place of registration rather than the statement as to the location of the principal office which is set out in the certificate of incorporation. It will be noticed that subsection (c) does not attempt to provide for the situation which arises when the corporation fails to set out the place of

its principal office in the certificate of incorporation. It speaks only of a corporation which has, that is possesses, no principal office in the State but does have an office in the State, and requires registration in every county where such an office is located.

On the other hand, subsection (d) seems to contemplate that the principal office, if it is shown by the certificate of incorporation, governs the place of registration where the corporation has no actual office in the State; and this provision is stressed to support the contention of the trustee that the location of the office as mentioned in the certificate is the governing factor.

■ Our view is in accordance with that of the District Judge, as set out in his carefully prepared opinion, that the actual location rather then the location set out in the certificate of incorporation governs the place of registration. It will have been noticed that the prior statute merely provided that a chattel mortgage should be registered in the county where the principal place of business of the corporation was actually located. This statute had been in effect for many years and it seems unreasonable to conclude that this feature would have been entirely discarded in favor of the place set out in the certificate of incorporation unless the change was clearly expressed in the amending Act. Furthermore, it must be borne in mind that it is provided in the corporation laws of the State, G.S. § 55–2 relating to the formation of domestic corporations, that the certificate of incorporation shall set forth the location of the principal office of the corporation in the State. Undoubtedly it is a rare case in which the corporation fails to comply with this mandate of the statute, and consequently it may be taken for granted that in nearly every instance a domestic corporation will have a principal office in North Carolina and will state its location in its certificate of incorporation. Therefore, the normal meaning of the reference in subsection (a) to a domestic corporation "which has a princi-

pal office shown by its certificate of incorporation" is a corporation which actually possesses a principal office set out or disclosed in the certificate. Interpreting subsection (b) in the same fashion, the proper meaning is that if the corporation does not actually possess the office shown in its certificate of incorporation, then the mortgage must be registered in the county where the principal office actually exists. Subsection (c) also is in harmony with this interpretation. It does appear from the wording of subsection (d) that the Legislature contemplated the possibility that the corporation might have no office in the State but might have designated the location of its principal office in the State in the certificate of incorporation, in which case the mortgage should be registered in that place, but we think that this provision should not govern the reasonable meaning of the prior sections.

Our attention has been called to other provisions of the corporation statutes of the State in which the location of the principal office is of importance. Thus it is provided in G.S. § 1–79 that for the purpose of suing and being sued the principal office of a domestic corporation, as shown by its certificate of incorporation, is its residence; and in G.S. § 44–78 that the place for filing the notice of an assignment of corporate accounts receivable in the case of a domestic corporation shall be in the county wherein the corporation has its *statutory* principal place of business in the State. It is suggested that it would be in harmony with these provisions if the mortgage registration statute should be given the interpretation for which the Trustee in Bankruptcy contends. We think, however, that these provisions throw but little light on the question before the Court. Indeed, the failure to use the precise phrase "statutory principal place of business" in the new mortgage registration statute tends to show the Legislature had in mind the actual place of business rather than the one stated in the certificate of incorporation. We

think that the present statute was not intended to work any radical change in the old law but, rather, to retain the accustomed practice of registration at the location of the principal place of business and also to take care of situations where the corporation did not have a principal office or any office within the State.

Affirmed.